UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:20-cv-00169-MOC

| | | |
|---|---|---|
| **JEANETTE BRYSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on judicial review of a final decision of the

Commissioner of Social Security denying Plaintiff's application for disability insurance benefits

under Title II of the Social Security Act (the "Act"). Plaintiff filed a Motion for Summary

Judgment, requesting reversal and an award of benefits or, in the alternative, a remand for a new

hearing. (Doc. No. 14). The Commissioner then filed a Motion for Summary Judgement

requesting the Court to affirm the Administrative Law Judge's (ALJ) judgement. (Doc. No. 16).

I.      **BACKGROUND**

    A.      **Administrative Exhaustion**

        On May 10, 2017, Plaintiff filed an application for Social Security disability insurance

benefits under Title II of the Act, alleging she had been disabled since May 15, 2015. (Doc. No.

1 at 1). Plaintiff's claims were denied initially and upon reconsideration. (Doc No. 14 at 2).

Plaintiff also filed a Title II Disabled Widow's Benefits Claim on October 4, 2018. (Id.). On

September 10, 2019, the ALJ held a hearing to consider Plaintiff's claims. (Id.). On October 15,

2019, the ALJ issued a decision, concluding Plaintiff was not disabled within the meaning of the Act. (Doc. No. 10-3 at 17). The Appeals Council denied Plaintiff's request for review on April 30, 2020, rendering the ALJ's decision final and thus reviewable by this Court. (Id. at 2). Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

**B.  Sequential Evaluation Process**

The Social Security Act states that "an individual shall be considered to be disabled . . . if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. § 404, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries their burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

### C. The Administrative Decision

The ALJ had to determine whether Plaintiff was disabled from May 15, 2015 to the date of the decision. Using the sequential evaluation process, the ALJ denied Plaintiff's claim at step four. (Doc. No. 10-3 at 31).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 15, 2015 (the alleged onset date). (Id. at 19).

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disk disease (DDD), reconstructive surgery of weight-bearing joint, ischemic heart disease, fibromyalgia, chronic obstructive pulmonary disease, and obesity. (Id. at 19-23).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id. at 24-25).

Before reaching step four, the ALJ found that Plaintiff, despite the aforementioned severe impairments, has the following residual functional capacity (RFC):

> [the aforementioned severe impairments] during the relevant period restricts
> [Plaintiff] to a sedentary range of exertional work activity with additional
> limitations to the following: occasional lifting and carrying of 10 pounds and
> frequent lifting and carrying of less than 10 pounds, standing and walking for six
> hours out of eight hours, sitting for six hours out of eight hours, frequent pushing
> and pulling with right upper extremity and left lower extremity, frequent climbing
> of ramps and stairs, occasional climbing of ladders, ropes, or scaffolds, frequent
> balancing, occasional stooping, frequent kneeling, occasional crouching, frequent
> crawling, frequent handling with the right upper extremity, need to avoid

concentrated exposure to heat, humidity, pulmonary irritants, and hazards, and need to use a cane on an occasional basis for ambulation and balance.

(Id. at 26).

At step four, using the RFC determination as guidance, the ALJ determined Plaintiff was able to perform "past relevant work as a dispatcher, clerical, DOT Code 249.167-014." (Id. at 31). Thus, the ALJ determined Plaintiff was not disabled under the Act. (Id. at 31-32).

The ALJ, finding Plaintiff did not have a disability at step four, did not complete a step five analysis. (Id. at 18, 31).

## II.    DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, the inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Here, Plaintiff alleges that the ALJ applied the incorrect legal standard in evaluating the limiting effects of Plaintiff's fibromyalgia on her ability to work. (Doc. No. 14 at 3). Specifically, Plaintiff alleges the following: (1) the ALJ applied the incorrect legal standard when evaluating objective medical evidence regarding her fibromyalgia; (2) the ALJ did not rely on substantial evidence in evaluating the limitations fibromyalgia causes on her daily activities; (3) the ALJ did not rely on substantial evidence when discounting her subjective complaints due to successful medical treatment; and (4) the ALJ applied an incorrect legal standard when discounting her subjective complaints due to conservative medical treatment. (Id. at 4-6).

As a result, Plaintiff alleges that the ALJ applied an incorrect RFC in determining what past relevant work Plaintiff can do at step four. (Doc. No. 14 at 2). The Court finds that the ALJ erred when evaluating the limiting effects of Plaintiff's fibromyalgia.

**A. The ALJ's Evaluation of the Limiting Effects of Plaintiff's Fibromyalgia**

In determining a claimant's RFC, an ALJ must follow a two-step process set forth in 20 C.F.R. § 404.1529 and SSR 16-3p to evaluate the claimant's symptoms. Arakas v. Comm., Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020). First, the ALJ must "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." Id. Second, the ALJ must assess the intensity and persistence of any symptoms stemming from the impairments to determine if they affect the claimant's ability to work. Id.

The ALJ satisfied step one by determining that Plaintiff's medically determinable ailments could reasonably be expected to cause some of the alleged symptoms. (Doc. No. 10-3 at 27). This determination is not disputed by either party.

Step two requires the ALJ to assess the intensity and persistence of symptoms stemming from the impairments defined in step one. Arakas, 983 F.3d at 95. The ALJ's analysis of Plaintiff's symptoms is flawed for the following reasons: (1) the ALJ applied the incorrect legal standard when evaluating objective medical evidence regarding Plaintiff's fibromyalgia; (2) the ALJ did not rely on substantial evidence when evaluating Plaintiff's limitations regarding her daily activities; (3) the ALJ did not rely on substantial evidence when evaluating the success of Plaintiff's treatment; and (4) the ALJ did not apply the proper legal standard when using Plaintiff's conservative course of treatment to discount her subjective complaints of fibromyalgia.

First, Plaintiff claims the ALJ applied the incorrect legal standard by evaluating objective medical evidence to discount Plaintiff's fibromyalgia. (Doc. No. 14 at 2). The Court agrees.

The Fourth Circuit has long held that objective medical evidence is not a requirement for a successful disability claim and a plaintiff can rely exclusively on subjective evidence to prove her symptoms were severe and continuous enough to prevent her from completing some types of work. See Arakas, 983 F.3d at 95. Furthermore, the Fourth Circuit has determined that the ALJ is applying an incorrect legal standard when "discrediting [a claimant's] complaints based on the lack of objective evidence corroborating them" because this increases the claimant's burden of proof by effectively requiring the claimant's subjective symptoms of fibromyalgia to have objective support. Id. at 97.

Additionally, the Fourth Circuit has recognized that this issue is "particularly pronounced in a case involving fibromyalgia" because the disease only manifests itself through subjective symptoms and "[p]hysical examinations [of patients with fibromyalgia] will usually yield normal results." Arakas, 983 F.3d at 96. Importantly, in Arakas, the Fourth Circuit noted that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." Arakas v. Comm., Soc. Sec. Admin., 983 F.3d 83, 97 (4th Cir. 2020).

Here, the ALJ noted Plaintiff, in her initial application, complained of issues completing the following activities:

> lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, climbing stairs, remembering, completing tasks, concentrating, following spoken instructions, interacting with the general public, and handling stress or changes in her routine.

(Doc. No. 10-3 at 26).

The ALJ noted that Plaintiff, at the time of the hearing, did not claim any new developments or changes in her condition or symptoms since the initial application. (Id.). The ALJ went on to say that Plaintiff complained at the hearing of ongoing issues completing the following tasks:

> lifting or carrying more than five to seven pounds, shopping in stores without assistance, using her bilateral hands, handling objects, performing household tasks, standing in one position for more than a few minutes at a time, and sitting more than a couple of minutes. The claimant further reiterated use of a cane. She again conceded that she could complete some light household chores on occasion, and driving short distances.

(Id. at 27).

The ALJ then stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id.). The ALJ then reviewed Plaintiff's medical history, where he detailed the aforementioned issues concerning fibromyalgia, chronic back pain, heart disease, DDD, high blood pressure, depression, anxiety, and post-traumatic stress disorder (PTSD). (Id. at 27-29). The ALJ then considered the testimony of two doctors, Dr. Dorothy Linster, M.D. (who reviewed Plaintiff's files in 2017) and Dr. Robert N. Pyle, M.D. (who reviewed Plaintiff's files in 2018), who both supplied the same conclusions as each other which contained the following findings:

> [plaintiff] was restricted to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking for a total of six hours in an eight-hour workday, sitting for a total of about six hours in an eight hour workday, frequent but not constant pushing and pulling with the right upper extremity and left lower extremity, occasional stooping, crouching, and climbing of ladders, ropes, and scaffolds, and frequent balancing, kneeling, crawling, and climbing of ramps and stairs. Dr. Linster further suggested that the claimant had to avoid concentrated exposure to extreme heat, humidity, hazards, fumes, odors, dusts, gases, poor ventilation, and further pulmonary irritants.

(Id. at 29-30).

Importantly, the ALJ noted that neither Dr. Linster nor Dr. Pyle independently examined Plaintiff. (Id. at 30). Despite this, the ALJ stated their opinions were "largely persuasive" in the RFC determination. (Id.). Furthermore, the ALJ stated that Plaintiff "repeatedly demonstrated essentially normal physical functioning during the majority of in-person assessments of record," Plaintiff demonstrated improvements following her surgeries, and Plaintiff's own reported activities were consistent with the doctor's opinions. (Id. at 29-30).

The ALJ concluded his RFC analysis by listing several other reasons for his decision, including that Plaintiff maintained "grossly intact" functioning throughout the relevant period and engaged in only conservative medication management. (Id. at 30).

The Court agrees with Plaintiff that the ALJ applied the improper legal standard when evaluating objective medical evidence to discount Plaintiff's fibromyalgia. The Court's decision is the result of a significant rule change in Arakas and is in line with post-Arakas decisions of other districts in the Fourth Circuit. See, e.g., Skipper v. Saul, No. 2:19-2833-RMG, 2021 WL 168426, at *1 (D.S.C. Jan. 18, 2021) (accepting and adopting magistrate judge's order reversing and remanding because the ALJ relied on objective medical evidence to discount the subjective complaints of the claimant concerning fibromyalgia); Suzanne O. v. Saul, No. 3:20-CV-61, 2021 WL 1195930, at *6 (E.D. Va. Mar. 30, 2021) (reversing and remanding because the ALJ improperly relied on medical findings to discredit the plaintiff's subjective complaints concerning fibromyalgia); Midgett v. Saul, No. 2:19-CV-46-FL, 2021 WL 1230188, at *4 (E.D. N.C. Mar. 31, 2021) (reversing and remanding because the ALJ relied on objective medical evidence to discount the plaintiffs subjective complaints concerning fibromyalgia).

Again, under the new <u>Arakas</u> standard, the ALJ is not allowed to consider objective medical evidence regarding a claimant's subjective symptoms of fibromyalgia "<u>even as just one of multiple factors</u>." <u>Arakas</u>, 983 F.3d at 97 (emphasis added).

Here, the ALJ used objective medical evidence to discount Plaintiff's testimony regarding her subjective symptoms of fibromyalgia as evidenced by the ALJ's statement that Plaintiff's subjective complaints "are not entirely consistent with the medical evidence and other evidence in the record." (Doc. No. 10-3 at 27). Furthermore, the ALJ directly stated that the opinions of Drs. Pyle and Linster were "largely persuasive," which means the ALJ considered their review of the objective medical evidence in making the determination that Plaintiff's subjective complaints regarding fibromyalgia were "inconsistent" with the objective medical evidence. (<u>Id.</u> At 30).

Additionally, the ALJ stated that "despite [Plaintiff's] myriad and longstanding subjective complaints, [Plaintiff] has repeatedly demonstrated essentially normal functioning during the majority of in-person assessments." (<u>Id.</u> at 29). The Fourth Circuit has stated this is improper, as fibromyalgia patients are unlikely to show abnormal functioning in in-person assessments. <u>Arakas</u>, 983 F.3d at 96.

As a result, the ALJ erred when he applied the incorrect legal standard by considering objective evidence as a factor in evaluating Plaintiff's subjective symptoms of fibromyalgia, which essentially required Plaintiff to prove her subjective symptoms of fibromyalgia with objective evidence.

Second, the Commissioner argues substantial evidence supports both the ALJ's evaluation and RFC assessment. (Doc. No. 16 at 5, 10). However, these arguments derive from a flawed interpretation of the opinion in <u>Arakas</u>, which the Commissioner describes as "stand[ing]

for the proposition that an ALJ cannot place undue emphasis on the lack of objective physical examination findings for a condition that under the prevailing medical understanding and Commissioner's policy is not association with such manifestations, specifically fibromyalgia." (Doc. No. 16 at 6). As this Court has discussed above, the decision in <u>Arakas</u> is much broader than the Commissioner claims. Furthermore, the Commissioner attempts to distinguish the instant case from <u>Arakas</u> by incorrectly claiming <u>Arakas</u> deals with fibromyalgia while the instant case does not. (<u>Id.</u> at 7). The instant case very clearly deals with fibromyalgia, just like <u>Arakas</u>. <u>Arakas</u>, 983 F.3d at 83; (Doc. No. 10-3 at 19).

The Commissioner's second argument falls victim to the same flawed interpretation of <u>Arakas</u> as the first argument. The Commissioner begins by citing the ALJ's use of objective medical evidence—such as successful surgeries, medical intervention, and normal test results. (Doc. No. 16 at 10). All of these findings consider objective medical evidence used to discount Plaintiff's subjective complaints regarding her condition and limitations on daily activities. (Doc. No. 15 at 10-11). Since the findings are all based on objective medical evidence, the Commissioner's second argument fails because the ALJ is not permitted to consider objective medical evidence to discount Plaintiff's subjective complaints of fibromyalgia. <u>Arakas</u>, 983 F.3d at 97.

Third, Plaintiff argues that the ALJ improperly discounted her limiting statements on her ability to perform daily activities. (Doc. No. 14 at 6).

"A claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities." <u>Arakas</u>, 983 F.3d at 101. The Fourth Circuit has stated when an ALJ considers a claimant's daily activities as evidence of disability, the ALJ "may not consider the type of activities a claimant can perform without also considering

the extent to which she can perform them." Id. at 99; Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018). Furthermore, it is improper for an ALJ to dismiss a claimant's subjective statements regarding the severity, persistence, and limiting effects of her symptoms because they may not be "completely consistent with the objective evidence." Arakas, 983 F.3d at 96. Lastly, the ALJ must provide an explanation as to how particular activities show Plaintiff can persist through an eight-hour workday. Arakas, 983 F.3d at 100.

For example, in Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018), the court found the ALJ did not properly consider the limitations on the activities the claimant could perform. While the ALJ noted that the claimant could maintain her personal hygiene, cook, perform light household chores, shop, socialize, and attend church, the ALJ failed to account for evidence of limitations on these activities, such as her inability to button her clothes, dry herself after bathing, and the length of time it took her to do laundry. Id. at 694-95.

Additionally, in Arakas, 983 F.3d at 100, the ALJ did not properly consider the limitations on the claimant's activities. The ALJ noted that the claimant could carry out tasks like shopping, driving, cooking, doing laundry, and performing chores, but the ALJ failed to consider that the claimant had difficulty performing some of the tasks. Id. For example, she had difficulty cooking, her daughter helped with most of the housework and shopping, she had difficulty walking distances, and she had severe fatigue after completing some of these tasks. Id. The court determined that the ALJ "improperly disregarded [claimant's] qualifying statements" and the ALJ "merely stated in a conclusory manner that Arakas' activities were "fully consistent" with his [RFC] assessment." Id.

Here, the ALJ stated that Plaintiff had retained "some semblance of a daily routine" because she could perform light chores, prepare meals, care for herself, drive, shop, handle money, and more. (Doc. No. 10-3 at 30).

However, Plaintiff also complained of additional limitations. Plaintiff complained that she must "pick and choose" what chores she does. (Id. at 52). For example, she cannot mop, sweep, or vacuum. (Id.). Furthermore, she can only do laundry with assistance from her daughter, she must take breaks while washing dishes, and she must take breaks while performing light cleaning due to pain. (Doc. No. 10-6 at 278, 280). Plaintiff also complained that she could only make simple meals, sandwiches, and microwaveable meals—while also needing to take breaks in the process due to pain. (Id. at 280). Additionally, when shopping, Plaintiff claimed she must lean on the shopping cart and take breaks regularly. (Id. at 281).

The instant case shares substantial similarities with both Woods and Arakas. The ALJs in Woods and Arakas failed to note limitations, such as the length of time it took the claimant to complete tasks, or the fatigue caused by completing the tasks. Woods, 888 F.3d at 694-95; Arakas, 983 F.3d at 100. They also failed to note limitations on tasks like chores, personal care, and shopping. Woods, 888 F.3d at 694-95; Arakas, 983 F.3d at 100.

Similarly, the ALJ in the instant case did not consider all the limitations Plaintiff complained of concerning her daily activities, including limitations on chores, shopping, and personal care. (Doc. No. 10-6 at 278, 280-81; Doc. No. 10-3 at 52). Therefore, just as the courts in Woods and Arakas found the ALJs did not rely on substantial evidence, the ALJ did not rely on substantial evidence in evaluating Plaintiff's daily activities. See Woods, 888 F.3d at 695; Arakas, 983 F.3d at 100.

Additionally, the ALJ's actual consideration of the few limitations he recognized were improper under Arakas, as he discounted Plaintiff's stated limitations because Plaintiff's complaints "are not entirely consistent with the medical evidence and other evidence in the record." Arakas, 983 F.3d at 100. The evidence the ALJ was referring to includes the opinions of doctors, Plaintiff's medical history, and Plaintiff's treatment history. (Doc. No. 10-3 at 27-30). Since the ALJ relied on the objective medical evidence—which should not have been considered—to discount Plaintiff's statements concerning the limiting effects of her symptoms, the ALJ failed to fully explain how Plaintiff would be able to complete the level of work stipulated by the RFC.

Thus, the ALJ did not illustrate how Plaintiff's daily activities showed she could work through an eight-hour workday under the conditions stipulated in the RFC, especially considering that a "claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities." Arakas, 983 F.3d at 101; see Woods, 888 F.3d at 694 (holding the ALJ did not explain how claimant's purported daily activities were consistent with the claimant completing the level of work stipulated in the RFC).

Fourth, Plaintiff contends that the ALJ erred by relying on his determination that Plaintiff's medical interventions were successful in managing her symptoms in order to discount her subjective complaints. (Doc. No. 14 at 5). Plaintiff further argues there is no inconsistency between Plaintiff's treatment and her subjective complaints. (Id. at 5-6).

When evaluating medical evidence, an ALJ must consider all the relevant evidence and not cherry-pick evidence that better supports a non-disability ruling while ignoring evidence to the contrary. Arakas, 983 F.3d at 98. Additionally, "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments,

[or] referrals to specialists, ... may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Id. at 102.

Plaintiff analogizes the instant case to Arakas. (Doc. No. 14 at 5). In Arakas, the court reversed the ALJ in part because the ALJ erroneously found an inconsistency between the treatment and the claimant's subjective complaints when the claimant increased dosage of their medications, tried a variety of treatments, and was referred to a specialist. Arakas, 983 F.3d at 102. The Fourth Circuit stated the ALJ had cherry-picked evidence favorable to his decision while discounting evidence that disfavored the ruling. Id.

Likewise, the court in Midgett v. Saul, No. 2:19-CV-46-FL, 2021 WL 1230188, at *3 (E.D.N.C. Mar. 31, 2021), determined the claimant attempted multiple treatments for her pain. The court stated her attempts at treatment were "an indication that an individual's symptoms are a source of distress." Id. Therefore, the court determined that this showing was sufficient to find Midgett's medical intervention was not successful at controlling her symptoms. Id.

Similarly, the ALJ in the instant case noted an increase in Plaintiff's Lyrica prescription in 2019, (Doc. No. 10-3 at 29), but did not mention that Plaintiff had experienced an increase in her pain levels in 2017, (Doc. No. 10-14 at 3022), was allowed an extra Oxycodone for her pain and resumed Lyrica in 2017, (id.), had her Lyrica increased later in 2017, (id. at 3049), attempted to resume taking Cymbalta in 2018, (id. at 3111), and was again treated for fibromyalgia in 2019, (id. at 3149).

In other words, the instant case is similar to Midgett, as both the ALJ in Midgett and the ALJ in the instant case discounted the claimant's symptoms by not mentioning evidence showing the claimant's attempts to seek additional treatment. Midgett, 2021 WL 1230188, at *3; (Doc. No. 10-14 at 3022, 3111, 3149).

By failing to consider whether the facts stated above are an indication that Plaintiff's symptoms are not an intense or persistent source of distress, the ALJ cherry-picked favorable facts and failed to provide substantial evidence for his decision to discount Plaintiff's subjective complaints based on an inconsistency between her medical treatment and testimony. Arakas, 983 F.3d at 102.

Finally, Plaintiff claims the ALJ applied an incorrect legal standard because the ALJ relied on the fact that Plaintiff's "physicians [had] also not recommended or prescribed more aggressive treatment." (Doc. No. 14 at 6).

An ALJ cannot fault a claimant "for failing to pursue non-conservative treatment options where none exist," especially when "the treatment decisions were wholly consistent with how fibromyalgia is treated generally." Arakas, 983 F.3d at 102.

For example, the courts in both Midgett and Charlene L. v. Saul determined a claimant undergoing treatment consisting only of drug intervention—just as Plaintiff here was taking Lyrica and Oxycodone—could not be faulted for failing to pursue more aggressive treatment because fibromyalgia is often only treated with pain relieving drugs. Midgett, 2021 WL 1230188, at *3; Charlene L. v. Saul, No. 3:19-CV-626, 2021 WL 725822, at *4 (E.D. Va. Feb. 3, 2021), accepted and adopted, No. 3:19-CV-626-REP, 2021 WL 725078, at *1 (E.D. Va. Feb. 24, 2021); (Doc. No. 10-14 at 3022, 3049); see also Arakas, 983 F.3d at 102 (explaining how fibromyalgia is normally treated with pain relievers).

Therefore, by expressly relying on the failure of Plaintiff's treating physicians to prescribe more aggressive treatment, (Doc. No. 10-3 at 30), the ALJ essentially required Plaintiff to have undertaken more aggressive treatment than is normal for fibromyalgia. Thus, the ALJ held Plaintiff to a higher legal standard than is required.

### B. Impact of ALJ's Errors on RFC Determination and the Sequential Evaluation Process

A reviewing court may remand where an ALJ failed to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record or where other inadequacies in the ALJ's analysis frustrate meaningful review. Social Security Ruling 96-8p, 1996 SSR LEXIS 15; See also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015).

Here, the ALJ did not (1) apply the proper legal standard when evaluating Plaintiff's fibromyalgia; (2) rely on substantial evidence by considering limitations on Plaintiff's daily activities; (3) rely on substantial evidence by discounting the impact if Plaintiff's medical intervention on her subjective complaints; or (4) apply the proper legal standard by discounting Plaintiff's subjective complaints due to her conservative treatments. These errors caused the ALJ to improperly assess the claimant's capacity to perform relevant functions. Thus, the ALJ's decision should be remanded.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**, and the Commissioner's Motion for Summary Judgment, (Doc. No. 15), is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner under 42 U.S.C. § 405(g), the ALJ's final decision is **REVERSED** and **REMANDED** for reconsideration consistent with this Order.

Signed: June 18, 2021



Max O. Cogburn Jr.
United States District Judge